IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Chapter 11 |
| CIVIC PARTNERS SIOUX CITY, LLC, | ) ) | |
|     Debtor. | ) | Bankruptcy No. 11-00829 |
| | ) | |
| CITY OF SIOUX CITY, IOWA, | ) | |
|     Plaintiff, | ) | Adversary No. 11-09045 |
| | ) | |
| v. | ) | |
| | ) | |
| CIVIC PARTNERS SIOUX CITY, LLC, | ) ) | |
|     Defendant, | ) | |
| | ) | |
| CIVIC PARTNERS SIOUX CITY, LLC, | ) ) | |
|     Counter-Claimant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF SIOUX CITY, IOWA, | ) | |
|     Counter-Defendant. | ) | |

## RULING ON THE MOTION FOR SUMMARY JUDGMENT BY THE CITY OF SIOUX CITY

This matter came before the Court on the City of Sioux City's Motion for

Summary Judgment on its claim and on Civic Partners Sioux City, LLC's

counterclaims. The Court held a hearing on the motion on May 4, 2012. Peter Leo

and Lance Ehmcke appeared for the City of Sioux City, Iowa (the "City"). A. Frank Baron and Malcolm Misuraca appeared for the Debtor, Civic Partners Sioux City, LLC ("Civic"). Robert Marticello appeared for Steve Semingson, individually. John Schmillen appeared for the U.S. Trustee. After hearing the arguments of the parties, the Court took the matters under advisement. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (C).

## STATEMENT OF THE CASE

On January 14, 2011, the City, filed a Petition at Law for Breach of Contract against Civic in the Iowa District Court for Woodbury County (No. LACV143863). On February 17, 2011, Civic filed an answer and a counterclaim. Civic filed a voluntary Chapter 11 petition on April 14, 2011. On June 27, 2011, Civic removed the breach of contract action by the City to this Court as an adversary proceeding. On, April 6, 2012, the City filed a Motion for Summary Judgment on its claim and on Civic's counterclaim. Civic resisted the City's Motion for Summary Judgment. For the reasons that follow, the Court denies the City's Motion for Summary Judgment.

## FACTUAL BACKGROUND AND THE PARTIES' ARGUMENTS

Civic is the developer and owner of an entertainment and shopping complex in Sioux City, Iowa. The complex was to be an anchor in the redevelopment of an area in Sioux City known as the Historic 4th Street Area. The primary tenant of

2

the complex is a 14-screen movie theater named Main Street Theatres.  Only one of the other spaces in the facility is occupied by a specialty shop.

Civic received its primary financing for the facility from First National Bank, which holds a first security interest in the structure and some of the equipment.  The City signed a development agreement with Civic committing to do some of the necessary work on surrounding infrastructure and support for the facility.  The City also loaned Civic $1,980,000.00 under a promissory note to help finance the project.  In exchange, the City took a second security interest on much of First National Bank's collateral.  The City also had a minimum tax assessment agreement with Civic for the property.  Other banks—Liberty National Bank and Cass County Bank—and the Small Business Administration also claim security interests in the property and equipment.

Unfortunately, for a number of reasons, Main Street's theater was not as successful as originally planned, and Main Street fell behind on the rent it owed to Civic.  By 2009, Civic claimed Main Street owed a multi-million dollar deficiency.  Main Street had several arguments against Civic for offsets against some or all of that rent.  Without Main Street's rent, Civic also fell behind on its payments to First National Bank.  Civic has never made any payments to the City.

In August of 2009, the four principal parties, Civic, Main Street, First National Bank, and the City began mediation to attempt to find a solution which

3

worked for all parties. Civic, Main Street, and First National Bank reached a tentative agreement which they presented to the City. The proposed mediation agreement outlined a global restructuring of the agreements and arrangements related to the project. Under the proposed mediation agreement, Civic would forgive Main Street's deficiency on the rent and lower Main Street's monthly payments. Main Street also agreed to release its claims and made a $200,000 restructuring payment to Civic. Civic was also to receive a lower interest rate and other reductions from its lenders. The proposed agreement was subject to the City's ratification by a vote of the Sioux City City Council. The Sioux City City Council ultimately did not approve the agreement.

The ultimate failure of the mediation had many consequences. One is the City's filing of its Petition at Law for Breach of Contract at issue here. Civic filed an answer and counterclaim in response to the City's claim. Another was Civic's April 14, 2011, voluntary Chapter 11 petition and removal of the City's case to the Bankruptcy Court. On April 6, 2012, the City filed both its Answer to Civic's Counterclaim and its Motion for Summary Judgment on its claim against Civic and on Civic's counterclaim against the City.

The City asserts that Civic has admitted liability on the City's claim in its bankruptcy schedules. While the City claims a total of $2,629,716.21, Civic has listed the City's claim as $2,050,056.79 and market it as liquidated, undisputed,

4

and non-contingent in its filings.  As such, the City believes it is entitled to Summary Judgment as to at least the scheduled amount.

The City also argues it is entitled to statutory immunity from—and thus summary judgment on—Civic's counterclaim.  The City argues that while Civic labeled its claim as a "Breach of Contract," Civic has actually brought tort claims.  The City notes that an action like the one Civic brought here for the breach of the duty which arises under a contract is in fact a tort claim under Iowa law.  The City argues that once Civic's claim is properly classified as a tort claim, either the discretionary function immunity to municipal tort liability, the immunity for construction of public roads, or the immunity for construction of public improvements—or all the above—would apply and bar Civic's claims.  Thus, the City believes it is immune from Civic's counterclaim and is entitled to judgment as a matter of law.

Civic argues that the counterclaims it asserts against the City are for breach of contract—not tort.  Civic claims that the City breached its contract under the development agreement by failing to properly install the public infrastructure required for proper water drainage.  Civic claims the City's breach of contract led directly to damages.  Civic suggests that the total value of its contract damages will result in a significant setoff of the claim by the City.  Civic asserts that the tort immunities do not apply as a matter of law to its contract claims.

5

## CONCLUSIONS OF LAW AND DISCUSSION

### A.  Summary Judgment

Summary judgment is governed by Rule 7056 of the Federal Rules of Bankruptcy Procedure.  Bankruptcy Rule 7056 applies Federal Rule of Civil Procedure 56 in adversary proceedings.  Federal Rule 56 states, in relevant part, that: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The granting of "[s]ummary judgment is proper if, after viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmovant, no genuine issues of material fact exist and the movant is entitled to judgment as a matter of law." Hayek v. City of St. Paul, 488 F.3d 1049, 1054 (8th Cir. 2007).

The burden of showing there are no genuine issues of material fact belongs to the moving party. Winthrop Res. Corp. v. Eaton Hydraulics, Inc., 361 F.3d 465, 468 (8th Cir. 2004).  "Once the movant has supported the motion, the non-moving party 'must affirmatively show that a material issue of fact remains in dispute and may not simply rest on the hope of discrediting the movant's evidence at trial.'" In re Houston, 385 B.R. 268, 271 (Bankr. N.D. Iowa 2008) (quoting Barge v. Anheuser-Busch, Inc., 87 F.3d 256, 260 (8th Cir. 1996)).  "When a moving party has carried its burden under Rule 56(c), the party opposing summary judgment is

required under Rule 56(e) to go beyond the pleadings, and by affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial." G.E. Capital Corp. v. Commercial Services Group, Inc., 485 F. Supp. 2d 1015, 1022 (N.D. Iowa 2007) (quotations omitted) (emphasis added).

"A 'material' fact is one 'that might affect the outcome of the suit under the governing law . . . .'" Johnson v. Crooks, 326 F.3d 995, 1005 (8th Cir. 2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). An issue of material fact is genuine if a reasonable fact-finder could return a verdict for the nonmoving party on the question. Anderson, 477 U.S. at 252. Evidence that raises only "some metaphysical doubt as to the material facts" does not create a genuine issue of fact. Matsushita Elec. Indus. Co. v. Zenith Radio, Corp., 475 U.S. 573, 586 (1986). "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" In re Patch, 526 F.3d 1176, 1180 (8th Cir. 2008) (quoting Matsushita, 475 U.S. at 587).

    **B.   The City of Sioux City's Motion for Summary Judgment on Its Claim**

        **1.   The City Argues Civic Has Admitted the Value of the City's Claim**

As noted above, the City has moved for summary judgment on two grounds. The first is based on the city's assertion that a huge part of its claim against Civic

7

is not in dispute. The City asserts a total claim of $2,629,716.21. Civic has not really disputed the vast majority of the amount. On Schedule D, Civic listed the City's claim as $2,050,056.79, and marked it as liquidated, undisputed, and non-contingent.

The reason for any disagreement in the amount (nearly $600,000) appears to be disagreement about how much interest has accrued and whether later promissory notes modifying or adding to the original debt are enforceable. The parties entered into several additional promissory notes. The original note for $1,980,000.00 at 6.33% interest was executed on February 21, 2003. On March 27, 2006, the parties executed an amendment to the promissory note which stated that the accrued interest as of July 17, 2005 was $145,420.99. The amendment also stated that the 6.33% interest rate would be applied to the accrued interest beginning on that date. Civic stated in its answer that this last document speaks for itself.

On December 1, 2006, the parties entered into another promissory note for $25,000.00. Civic disputes the enforceability of this note. Civic claims that it received no consideration and was fraudulently induced to sign the note.

While there is some disagreement about the modifications and later amendments, there does not appear to be a dispute about the original debt or the accrual of interest on that debt.

> Statements in bankruptcy schedules are executed under penalty of perjury and when offered against a debtor are eligible for treatment as judicial admissions. In the Matter of Gervich, 570 F.2d 247, 253 (8th Cir. 1978). A debtor may not adopt a cavalier attitude toward his [sic] the accuracy of his schedules by arguing that they are not precise and correct. In re Duplante, 215 B.R. 444, 447 n.8 (9th Cir. BAP 1997).

In re Bohrer, 266 B.R. 200, 201 (Bankr. N.D. Cal. 2001). The statements in the bankruptcy schedules may be treated as binding admissions, unless they are later amended. See In re Rollings, 451 Fed. App'x. 340, 348 (5th Cir. 2011) (finding that while statements in bankruptcy schedules are evidence that is admissible and may be treated as admissions, the schedules are not binding judicial admissions if later amended). In this case, Civic made no later amendment to the schedules. Civic has admitted it owes the City up to $2,050,056.79 on the original promissory note. The City would still need to prove any additional amount based on interest rate calculations and/or the enforceability of the later notes and amendments.

Even though the City establishes that a large part of the amount it claims is due is not in dispute, summary judgment is not appropriate on its claim. Civic has asserted a number of theories for setoffs, other affirmative defenses, and counterclaims which might significantly alter the amount actually due to the City. Civic makes a setoff claim, for example, based on its assertion that the City waived certain non-payments and failed to fulfill its agreement to lower certain taxes. However, the core of Civic's argument for setoff or some other reduction in the value of the City's claim is tied up in Civic's counterclaim, which is yet to be

9

determined. The Court denies the City's Motion for Summary Judgment to the extent it requests a determination that it is owed a certain amount of money.

### 2. The City's Motion for Summary Judgment on the Counterclaims of Civic Partners

There are two main issues raised in the portion of the City's Motion for Summary Judgment on Civic's counterclaim. The first is whether Civic has made a contract claim, a tort claim, or both. The second—assuming there is some tort claim—is whether the tort immunity claims the City has raised bar some or all of Civic's counterclaims.

#### a. Does Civic Partners' Counterclaim Allege Tort Claims, Contract Claims, or Both?

The City asserts that Civic's counterclaims are tort claims from which the City is immune under Iowa law. Civic argues it is making contract claims, not tort claims. If Civic makes only contract claims, the tort immunities do not apply. Civic also seems to argue that even if its claims are tort claims, summary judgment is not appropriate because there are genuine issues of material fact as to whether the immunities apply here.

Civic's counterclaim asserts two separately captioned but un-numbered headings: "Breach of Contract" and "Damages for Changing Street Grade." Under the "Breach of Contract" heading Civic's counterclaims specified the ways it believed the City breached the contract:

10

> The City breached the Contract in one or more of the following ways:
> (a) by failing to design and construct the public improvements in and around Fourth Street in a manner that meets generally applicable design and construction standards;
> (b) by failing to design and construct the sidewalks and street so that surface drainage (i.e., rain water) flows away from, and not into, Civic's buildings; and
> (c) by failing to maintain the common areas, including but not limited to,
> > (i) failing to repair the clay-fired interlocking pavers that were displaced as a result of the freezing of the underlying soil, which caused certain pavers to elevate in such a manner that they prevented certain exterior doors from opening; and
> > (ii) failing to remedy the surface drainage problems that caused the water not only to sit and pond on sidewalks and in front of certain doors to Civic's building but also to enter into Civic's building.

(Answer and Counterclaim, ECF Doc. No. 1, p. 27.)

Under the "Damages for Changing Street Grade" heading, Civic claims the City improperly changed the grade of the improvements it made from the grade the City had specified. Civic asserts damages resulting from the change the City allegedly made to the grade.

The City argues that Civic's counterclaims are all based on a tort theory because Civic's claims are all for the breach of a duty arising out of a contract. The City notes that Iowa law distinguishes between actions, *ex contractu*, for breach of contract and tort actions, *ex delicto*, for breaching a duty which arises out of the contract. Schooley v. Orkin Exterminating Co., 2004 WL 3168274, at *6–8 (N.D. Iowa Nov. 29, 2004) (Noting that Iowa courts in deciding whether a cause of

11

action is *ex delicto* look "for a separate and distinct duty that arose out of the contract, and not merely a term of the contract."). The City then asserts that it is immune from all of Civic's claims because they are tort claims that are barred by several municipal and statutory immunities.

The City is correct that Iowa law distinguishes between claims brought on the terms of the contract and those brought based on a breach of a duty arising under a contract. Schooley, 2004 WL 3168274, * 6–8. "The Iowa Supreme Court has stated that '[w]hile ordinarily a breach of contract is not a tort, the contract nevertheless may establish some duty for which a violation may be tortious, or the neglect of which an action *ex delicto* will lie.'" Mutual Service Cas. Ins. Co. v. Armbrecht, 142 F. Supp. 2d 1101, 1108 n.3, 1111 (N.D. Iowa 2001) (quoting M&W Farm Service Co. v. Callison, 285 N.W.2d 271, 276 (Iowa 1979)). The critical question is whether the plaintiff asserts a breach of a duty or whether the plaintiff relies on the breach of a contractual term, i.e. the breach of a promise. See Schooley, 2004 WL 3168274, at *8.

The City argues that "Civic's state-court counterclaim employs the lexicon of a tort action." (Reply Brief, ECF Doc. No. 33, p. 2.) The City points out Civic's counterclaim states that the work was supposed to have been done "in a manner that meets generally applicable design and constructions standards." (Answer and Counterclaim, ECF Doc. No. 1, p. 27.) The City suggests this

language shows Civic is attempting to hold the City to a standard of care for the breach of duty in tort. (Reply Brief, ECF Doc. No. 33, p. 2.) The City specifically argues that:

> Civic's state-court counterclaim does not allege that any redevelopment terms were left unfulfilled by the City. Rather [Civic] claims that independent tort duties existed between the parties by virtue of their redevelopment agreement, and that those duties were negligently breached, causing damages to Civic's real property.

(Reply, at p. 3.)

Civic insists it is bringing only contract claims—not tort claims. Civic never suggested the City was negligent, and in fact, never uses the words negligent or negligence. Simply using language such as "generally applicable design and construction standards" does not necessarily mean that Civic is making a claim of negligence or bringing a tort claim. The City is correct that such language might be used in a tort suit. However, the use of such language alone does not necessarily make it a tort claim. The terms of the contract might also hold the parties to such a standard.

The contract between the parties is short and lacks many of the specifics that are in dispute on this issue. For example, the contract between the parties stated, among other things:

> (5) The City shall provide and pay for the design and construction of the Fourth Street between Jones and Virginia Streets as shown in Exhibit "D" or any subsequent site plan to be approved by the City, together with all other public improvements which are to be

> completed in connection with Fourth Street, including, but not limited to, sidewalks and historic lighting. Such street and associated public improvements shall be completed on or before June 1, 2004.

(Answer and Counterclaim, Ex. A, ECF Doc. No. 1, p. 30.) What it means to "complete" design and construction is not further specified. It is also not specified what "other public improvements" were intended. Civic has offered some extrinsic evidence from its principal, Mr. Semingson, to explain what was intended.

While there is no explicit contract term using the language, it may be—as Civic seems to suggest—that the implicit terms of the contract hold a party to generally applicable standards. For instance, the parties may have understood the contract to mean that the work would be completed according to generally applicable standards and/or the term may be reasonably supplied in order to interpret what it means for the design and construction work to be complete. See Restatement (Second) of Contracts §§ 201, 204. "When the parties to a bargain sufficiently defined to be a contract have not agreed with respect to a term which is essential to a determination of their rights and duties, a term which is reasonable in the circumstances is supplied by the court." Restatement (Second) of Contracts § 204. In the absence of some more specific term, a term requiring the completion of the work according to generally applicable design and construction standards seems reasonable. This Court finds that Civic has claimed that the City failed to

14

complete the design and construction as required by the contract and that the contract required the design and construction meet generally applicable standards. The Court finds this is a contractual claim.

   Since Civic has made claims for breach of contract, the City's immunity defenses to tort liability are inapplicable.  See Kersten Co., Inc. v. Department of Social Services, 207 N.W.2d 117, 118–20 (Iowa 1973) (finding the state had waived its sovereign immunity and thus was liable for its express contracts); see also Dolezal v. City of Cedar Rapids, 326 N.W.2d 355, 359–60 (Iowa 1983) (stating that the waiver of sovereign immunity applied to unwritten contracts and contract theories such as quasi-contract and unjust enrichment).  The City has argued only that it is entitled to judgment as a matter of law because of its tort immunity.  The City's arguments assume Civic's claims are tort claims.  Because the Court finds that Civic has brought contract claims, the City's arguments are inapplicable.  The City made no argument that summary judgment is appropriate on contract claims.  The City has thus failed to show it is entitled to summary judgment on Civic Partner's counterclaims.

## CONCLUSION

For the reasons stated above, the Court denies the City's Motion for Summary Judgment.

**IT IS HEREBY ORDERED** that the City of Sioux City's Motion for Summary Judgment is **DENIED**.

Dated and Entered: January 3, 2013

_____
**THAD J. COLLINS, JUDGE
UNITED STATES BANKRUPTCY COURT**